IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

METROPOLITAN LIFE
INSURANCE COMPANY,

    Plaintiff,

v.

DONALD BROOKS, et al.,

    Defendants.

Case No. 3:16-cv-53

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANT DONALD BROOKS'
MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS
CYNTHIA AND EBONY JACKSON (DOC. #23); COUNSEL FOR
DONALD BROOKS TO SUBMIT ITEMIZED ATTORNEY FEES AND
COSTS, AND ADDRESSES OF BENEFICIARIES WITHIN SEVEN DAYS

---

This matter is currently before the Court on Defendant Donald Brooks' Motion for Default Judgment Against Defendants Cynthia M. Jackson and Ebony M. Jackson. Doc. #23. The Court held an evidentiary hearing on November 28, 2016, at which neither Cynthia nor Ebony Jackson appeared. Defendant Donald Brooks then filed a post-hearing brief. Doc. #35. For the reasons set forth below, the Court sustains the motion for default judgment.

I.    **Background and Procedural History**

Charles D. Jackson died on February 19, 2015. He had a Federal Employees' Group Life Insurance policy ("FEGLI"), worth $17,000, issued by

Plaintiff Metropolitan Life Insurance Company ("MetLife"). A beneficiary designation, dated October 8, 1996, assigned 100% of the life insurance proceeds to Charles D. Jackson's wife, Rosemary. Doc. #1-2, PageID#9. Rosemary, however, died in 2002. Another beneficiary designation, dated January 4, 2008, assigned 50% of the life insurance proceeds to his daughter, Cynthia Jackson, and 50% to his granddaughter, Ebony Jackson. Doc.#1-1, PageID#8.

After Charles died, MetLife received claim forms from Cynthia and Ebony. Doc. #1-5, PageID##19-23. It also received a claim form from Defendant Donald Brooks, who claimed to be Charles D. Jackson's son. *Id.* at PageID##16-17. To cover funeral expenses, Cynthia, Ebony and Donald assigned $6,610.68 of their interest in the life insurance proceeds to Newcomer Funeral Home, which then re-assigned its interest to Defendant Forethought Capital Funding, Inc. Doc.#1-4, PageID##11-14.[1]

MetLife then filed this interpleader action. According to the Complaint, MetLife received several letters from an attorney representing Donald Brooks. Brooks alleged that the January 4, 2008, beneficiary designation form was void, because, on that date, Charles D. Jackson lacked the mental capacity to designate a beneficiary. Brooks further alleged that, at that time, Charles D. Jackson was being exploited by Cynthia and Ebony. Doc. #1-6, PageID##24-27.

---

[1] The Clerk of Court has released $6,610.68, plus applicable interest, to Defendant Forethought. All claims against Forethought have been dismissed. Docs. ##31, 33.

2

MetLife noted that, if the January 4, 2008, beneficiary form is valid, Cynthia and Ebony would each receive 50% of the remaining proceeds of the life insurance policy. However, if it is void, payment would be determined according to statute, with proceeds distributed "to the child or children of the employee and descendants of deceased children by representation." 5 U.S.C. § 8705(a).

Proceeding *pro se*, Cynthia and Ebony filed an Answer to the Complaint. Doc. #11. They denied exploiting Charles, and claimed that he was mentally competent on January 4, 2008, when he signed the beneficiary designation form. They also alleged that Donald Brooks had no documented proof that he was Charles D. Jackson's biological son.

Thereafter, Donald Brooks filed his Answer, along with a Cross-Claim. Doc. #16. Therein, he stated that "Defendants Cynthia and Ebony Jackson procured the beneficiary designation . . . through the use of undue influence and/or coercion when the signer, Charles D. Jackson, was incompetent, was of unsound mind, and/or lacked the mental and/or legal capacity to make that designation." He therefore claimed that the beneficiary designation form was null and void. He stated that he was Charles D. Jackson's son, and suggested that the life insurance proceeds be distributed equally among Cynthia, Ebony and himself. In light of "Cynthia and Ebony Jackson's attempt to use unlawful means to get more than their proper share of the proceeds," Brooks suggested that his attorney fees should be deducted from their share of the proceeds. Doc. #16, PageID##66-67.

When Cynthia and Ebony failed to file an Answer to Brooks' Cross-Claim, the Clerk of Court entered default against them. Doc. #22. Brooks then filed his Motion for Default Judgment. Doc. #23.

II.  Discussion

The Court determined that an evidentiary hearing was needed to resolve questions concerning Donald Brooks' biological relationship to Charles D. Jackson, and questions concerning the validity of the January 4, 2008, beneficiary designation form. Given that Cynthia and Ebony are in default, the Court must accept all well-pleaded factual allegations in the Cross-Claim, except those relating to damages, as true. See Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006). The same cannot be said, however, about conclusions of law. Whether the January 4, 2008, beneficiary designation was void because of undue influence or coercion is a mixed question of law and fact.

An evidentiary hearing was held on November 28, 2016. Donald Brooks appeared with counsel. Although Cynthia and Ebony Jackson received notice of the hearing, they did not appear. Witnesses included Montgomery County Adult Protective Services ("APS") employees Linda Hazel-Sandridge and Dean Robert, attorney David Schmidt, and Donald Brooks.

Based on the testimony presented at the hearing, the Court has concluded that Donald Brooks is Charles D. Jackson's biological son. Although sometimes mistakenly referred to as "Donald Jackson," Brooks was listed as "next of kin" on

probate filings made in 2010 and 2011, when wards were appointed for Charles D. Jackson, Exs. B-1, B-2, B-5, B-6, and listed as Charles D. Jackson's "adult son" on estate filings made in 2015, Ex. B-10. Moreover, Donald testified that Charles was involved in his life from the time he was a small child, and that they referred to each other as "dad" and "son." This testimony was corroborated by Ms. Hazel-Sandridge and Mr. Schmidt, who testified that Charles acknowledged that Donald was his son. Donald also testified that, if Charles were not his father, he would not have quit his job in Idaho to become Charles' primary caregiver the last several years of his life.

      Charles D. Jackson was found to be incompetent, and was appointed a guardian in June of 2010. Ex. B-4. Nevertheless, based on the testimony presented at the hearing, the Court has concluded that Charles was still mentally competent on January 4, 2008, when he signed the beneficiary designation form directing that 50% of his life insurance proceeds go to Cynthia and 50% to Ebony.

      Mr. Robert testified about his interactions with Charles in October of 2007. According to Robert, although Charles had trouble communicating orally due to past strokes, he could communicate in writing. Charles was concerned that his step-daughter, Kathy, who was designated as his power-of-attorney but lived out-of-state, was not paying his bills or getting his prescriptions filled in a timely manner. Robert therefore assisted Charles with revoking that power-of-attorney, and designating Ebony as his power-of-attorney instead. Robert believed that, as

5

of October 31, 2007, Charles was still competent and had not lost the ability to make informed decisions.[2]

At the hearing, Hazel-Sandridge testified about her notes from the APS case file. Ex. B-17. A note dated August 21, 2009, indicates that she got a phone call from Donald Brooks, who said that "Dr. Adegbile is going to write the statement regarding [client] being competent to be able to choose who handles his money." Given that Charles was mentally competent in October of 2007, and was still apparently competent to make his own decisions in August of 2009, the Court finds it more than likely that he was also mentally competent on January 4, 2008.

This, however, is not dispositive. The fact that Charles was mentally competent when he signed the beneficiary designation form does not necessarily mean that it is valid. Donald alleges that Cynthia and Ebony procured the beneficiary designation through the use of undue influence and/or coercion. Under Ohio law, "[e]ssential elements of undue influence are (1) a susceptible testator; (2) another's opportunity to exert it; (3) the fact of improper influence exerted or attempted; and (4) the result showing the effect of such influence." *West v. Henry*, 173 Ohio St. 498, 510-11 (1962).

Testimony presented at the hearing supports each of these elements.[3] Charles did not want to go to a nursing home, but needed additional assistance to

---

[2] Ms. Hazel-Sandridge had no involvement with Mr. Jackson prior to October of 2008, and admitted that she could not speak as to his mental competency on January 4, 2008.

6

be able to remain at home.  Dean Robert testified that Charles was reluctant to let Cynthia reside with him, given her history of alcohol and drug abuse.  Ebony told Robert that Cynthia was not reliable enough to be trusted with Charles' finances.  According to Robert, Charles felt compelled to seek whatever support he could find so that he could remain in his own home.  Linda Hazel-Sandridge testified that Cynthia and Ebony would sometimes threaten that, if he did not cooperate with them, they would put him in a nursing home.

Donald Brooks testified that, on January 4, 2008, the very date Charles signed the second and final beneficiary designation form, Cynthia and Ebony — who, according to Donald, never visited Charles unless they wanted something – called to ask if they could take Charles to dinner.  They picked him up around 11:00 a.m., and were gone for a couple of hours.  When they dropped him off, they had a bag of Kentucky Fried Chicken with them.  When Donald asked Charles how dinner was, Charles said, "pffft."  Charles was "kind of pissed, he was not himself."  When Donald asked him if he needed anything, Charles indicated that he just wanted Cynthia and Ebony to leave, "just wanted to be rid of them that day."  Donald found this peculiar, because Charles always wanted them to spend more time with him.

---

[3] Although undue influence was proven at the hearing by a preponderance of the evidence, the Court could have also accepted as true the factual allegation in the Cross-Claim that "Cynthia and Ebony Jackson procured the beneficiary designation . . . through the use of undue influence," Doc. #16, PageID#66, given their failure to file an Answer. See *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006).

7

Donald also testified that his father never expressed any intention of disinheriting him. He believes that Charles was susceptible to coercion, given that Ebony still had the power-of-attorney and controlled his finances and he did not want to go to a nursing home. Cynthia and Ebony would often bully Charles. Based on Charles' demeanor on the date in question, Donald is convinced that Cynthia and Ebony exercised undue influence in getting Charles to sign the beneficiary designation form.

The Court finds the testimony of each of these witnesses to be credible. Because he did not want to go to a nursing home, and Ebony controlled his finances, Charles D. Jackson was susceptible to undue influence. Cynthia and Ebony had the opportunity to exert undue influence when they took him to dinner on January 4, 2008, and, in fact, coerced him into designating them as the sole beneficiaries on his life insurance policy. There is no indication that, on that date, Charles had any reason to disinherit his three other children, and had never expressed any intent to do so.

As the Supreme Court of Ohio has held, "[i]n determining whether a particular influence brought to bear upon a testator was 'undue,' the focus is whether the [result of the] influence was reasonable, given all the prevailing facts and circumstances. In other words, would a reasonable person in the [testator's] position have done what the [testator] did?" *Krischbaum v. Dillon*, 58 Ohio St. 3d 58, 68 (1991). The Court finds that, under the facts and circumstances presented here, absent undue influence, a reasonable person in Charles D. Jackson's position

would not have designated Cynthia and Ebony as the sole beneficiaries of his life insurance policy.

Because Charles D. Jackson's signature on the January 4, 2008, beneficiary designation form was the product of undue influence, that designation is void. Given that there was no valid beneficiary designation form on file on the date of Charles' death, the proceeds of the life insurance policy must be distributed, according to statute, "to the child or children of the employee and descendants of deceased children by representation." 5 U.S.C. § 8705(a).

Evidence shows that Charles D. Jackson had four children, three of whom are still alive. Cynthia Jackson had a brother, Charles A. Jackson, who is now deceased. Charles D. Jackson also had two children with another woman to whom he was never married – Donald Brooks and Barbara Scott. Donald, Cynthia, Charles A., and Barbara are all listed as next of kin on the 2010 and 2011 probate forms entitled "Next of Kin of Proposed Ward." Exs. B-2, B-5. Donald, Cynthia and Barbara are listed as "Children, Next of Kin" on probate court documents filed in 2015, in connection with Charles' estate, Charles A. Jackson having become deceased in the interim. Ex. B-10. Although Barbara did not file a claim with MetLife for her share of the life insurance proceeds, she is nevertheless statutorily entitled to her portion of the proceeds.[4]

---

[4] The claim forms that Cynthia and Ebony filed with MetLife required them to list the decedent's next of kin, including each living child and the descendants of each deceased child. Cynthia and Ebony each wrote that Jannell Jackson was Charles D. Jackson's granddaughter. Doc. #1-5, PageID##20, 23. This led the Court to

9

Accordingly, the balance of the life insurance proceeds being held by the Clerk of Court will be divided as follows: 1/3 to Donald Brooks, 1/3 to Cynthia Jackson, and 1/3 to Barbara Scott. Ebony Jackson is not entitled to any of the proceeds because her mother, Cynthia, is still alive. The Court agrees, however, that Donald Brooks' attorney fees and costs should be deducted from Cynthia Jackson's share of the life insurance proceeds, given her role in wrongfully procuring the January 4, 2008, beneficiary designation.

Within seven days of the date of this Decision and Entry, counsel for Donald Brooks shall file an itemized statement of attorney fees and costs. Counsel shall also provide the Court with current addresses for Donald Brooks, Cynthia Jackson, and Barbara Scott, so that final distribution of the insurance proceeds can be made by the Clerk of Court. No distribution shall be made until further order of the Court. This case shall remain pending on the Court's docket.

Date: January 10, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

speculate that Jannell Jackson might be the daughter of Charles A. Jackson, who is deceased. If so, she would be entitled to his portion of the life insurance proceeds. At the hearing, however, Donald testified that Jannell was Charles D. Jackson's *niece*, whose parents are Stevie and Lorraine. Having been presented with no evidence to the contrary, the Court accepts this testimony as true.